815 P.2d 914

**Timothy Price QUINTON, Petitioner,**

v.

**SUPERIOR COURT OF the STATE of Arizona, In and For the COUNTY OF MOHAVE, the Honorable Leonard C. Langford, a judge thereof, Respondent Judge,**

**William J. EKSTROM, Jr., Mohave County Attorney, Real Party in Interest.**

**No. 1 CA–SA 90–224.**

Court of Appeals of Arizona, Division 1, Department E.

Feb. 19, 1991.

Review Denied Sept. 12, 1991.

M. Ruth O'Neill, Mohave County Legal Defender, Kingman, for petitioner.

William J. Ekstrom, Jr., Mohave County Atty. by Robert R. Moon, Deputy County Atty., Kingman, for real party in interest.

Grant Wood, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., Phoenix, for respondent.

## OPINION

CLABORNE, Judge.

Timothy Price Quinton (defendant) was indicted for kidnapping and custodial interference, convicted by a jury, and sentenced to thirty years in prison. Before sentencing, but after this first indictment, the defendant was indicted for first degree murder and is awaiting trial on that charge. Defendant claims that the subsequent murder prosecution violates his state and federal constitutional double jeopardy rights [1] because the victim and the conduct involved in the kidnapping [2] are the same victim and the same conduct to be proved in the prosecution of the first degree murder case. Defendant moved to dismiss the murder prosecution on this sole ground. The trial court denied the motion. Defendant now brings this special action.

---

1. Constitution of the United States, Amendment V:

    [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb;....
Arizona Constitution, Art. 2, § 10:

    No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense.

2. We will not refer to the custodial interference since it is not involved in this issue.

There is no right of appeal from the denial of a motion to dismiss a prosecution. *See State v. Whitney,* 108 Ariz. 277, 278, 496 P.2d 138, 139 (1972); *Amos v. Bowen,* 143 Ariz. 324, 327, 693 P.2d 979, 982 (App.1984). For this reason, we accept jurisdiction of this special action. *Nelson v. Roylston,* 137 Ariz. 272, 273, 669 P.2d 1349, 1350 (App.1983).[3] *See* Rules 3(c) and 8(a), Arizona Rules of Procedure for Special Actions. For the reasons set forth, we grant relief.

## FACTS

Rebecca Lanning did not return to her family's campsite on the bank of the Colorado River in Mohave County on a night in September of 1989. She had been seen with the defendant before her disappearance. Her dead body was discovered in a dump some seventeen days later. The defendant was arrested on October 7, 1989. On October 26, 1989, a Mohave County Grand Jury indicted and charged him with kidnapping and custodial interference. The defendant's trial was to commence on June 4, 1990.

On May 17, 1990, the Mohave County Grand Jury indicted the defendant and charged him with the first degree murder of Rebecca Lanning pursuant to A.R.S. § 13–1105.[4] The facts presented to each grand jury to obtain both indictments were virtually identical. When the defendant was arraigned on the murder charge on May 25, 1990, both the trial court and the prosecutor were informed that the private attorneys representing defendant on the kidnapping and custodial interference charges would not be defending him on the first degree murder charge. Although there was some discussion between the Mohave County Attorney's office and the public defender's office, which had been assigned to defend the defendant on the murder charge, about a continuance of the June 4 trial date or a consolidation of the two indictments, no formal motions were filed. The defendant was tried for kidnapping on June 4, 1990.

The state's case concerning the kidnapping of Rebecca Lanning was circumstantial. Its two main ingredients were (1) the defendant was seen with Rebecca Lanning before her disappearance and (2) she was later found dead. The state's theory under the kidnapping statute, A.R.S. § 13–1304, was that the defendant knowingly restrained Rebecca Lanning with the intent to inflict death.[5] The state proved the death of the child, introduced pictures of her body, and argued that the defendant had killed her. The jury convicted the defendant of kidnapping. The trial court sentenced him to thirty years in prison.

After the sentencing, the public defender moved to dismiss the murder indictment on the grounds of double jeopardy. During the oral argument on the motion to dismiss, the following colloquy between the deputy county attorney and the trial court occurred:

3. *See also Abney v. United States,* 431 U.S. 651, 659, 97 S.Ct. 2034, 2040, 52 L.Ed.2d 651 (1977). In *Abney,* the Supreme Court held that denial of a motion to dismiss based on double jeopardy grounds constitutes a "final decision" and is immediately appealable. The Court reasoned that:

> if a criminal defendant is to avoid exposure to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs. *Id.* at 662, 97 S.Ct. at 2041.

4. A.R.S. § 13–1105 reads as follows:

> A. A person commits first degree murder if:
> 1. Intending or knowing that his conduct will cause death, such person causes the death of another with premeditation; or

2. Acting either alone or with one or more other persons such person commits or attempts to commit ... kidnapping under § 13–1304, ... and in the course of and in furtherance of such offense or immediate flight from such offense, such person or another person causes the death of any person.

5. A.R.S. § 13–1304 provides:

> A. A person commits kidnapping by knowingly restraining another person with the intent to:
> \* \* \* \* \* \*
> 3. Inflict death, physical injury or a sexual offense on the victim, or to otherwise aid in the commission of a felony;
> \* \* \* \* \* \*

THE COURT: Okay. Mr. Moon, I had a question. Do you agree that your evidence at the murder trial will be basically a replay of the evidence at the other trial?

MR. MOON: It would be a lot of replay; however, some of the things that were precluded in the kidnapping trial I would hope to be able to get admitted into the murder trial. In addition, there was some knew [sic] information we received about halfway through the kidnapping trial about a statement allegedly made by the Defendant, and in fact I had rested when the information came to my—came to me and I would have had to try to reopen my case in chief to present this; and that again turned out to be maybe not as crystal clear as it was initially reported to me—seems like everything in this case has been that way—*but there would be—just about everything I presented in the first case would be presented again, and hopefully there would be some additional evidence. One other procedure—*

THE COURT: *Just a second. The items you said were precluded, these are matters you wanted to present at the kidnapping trial, and so it sounds like it's just evidence that you used at the kidnap trial would be the only evidence that would be presented at the murder trial plus in addition evidence that you tried to get in at the kidnapping trial but couldn't. Doesn't sound like you'll have anything different in the way of evidence than what you used or wanted to use in the kidnap trial other than the—*

MR. MOON: Other than the one item that came to my attention after I had rested.

THE COURT: That's something you wanted to use at this—at the kidnapping trial but it was too late?

MR. MOON: It was too late. Of course, I didn't know about it until it was too late, that's correct.

THE COURT: *So the scenario that this murder trial, if it goes on, is going to be the same as last time except the judge just goes through and pulls out the—puts in a murder instruction, takes out the one defining custodial interference and kidnapping.*

MR. MOON: *Well, that would be close to an accurate description, that is true, your Honor.* The evidence that was precluded at the first trial was precluded because it pertains more to a murder charge, and Judge Pope ruled that it would be too prejudicial in a case where he was not charged with murder. That was—it wasn't for any search and seizure issues or anything along those lines. (Emphasis added.)

Clearly, the state intended not only to present basically the same evidence in the murder case, but also the conduct to be presented was going to be the same.

The trial court denied the motion and further found that even if the Double Jeopardy Clause were applicable, the defendant's counsel in the kidnapping matter and counsel in the murder case opposed consolidation of these charges at the trial which commenced on June 4, 1990.

## DISCUSSION

The state's response to the contention that the first degree murder prosecution violates the double jeopardy rights of the defendant is twofold. First, the state contends that the claim of double jeopardy may be waived, and that the acts of defense counsel in failing to agree to a continuance or a consolidation of the two indictments constituted a waiver. There is no disagreement that the basis of this argument is the conversation between the prosecutor and the attorneys representing the defendant on both the kidnapping and the murder charges. The state did not file a formal motion to continue or to consolidate. Nor does the record indicate that the court or the defendant knew of the state's verbal request to consolidate before the kidnapping trial.

Second, the state contends that the prosecution for kidnapping is not the "same offense" within the meaning of the double

jeopardy prohibition. We disagree with both contentions.

### A. Did the Defendant Waive His Double Jeopardy Rights by Not Agreeing to a Consolidation of the Two Indictments?

■ Our courts have long held that we should indulge every reasonable presumption against a waiver of a fundamental constitutional right. *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *State v. Anderson,* 96 Ariz. 123, 131, 392 P.2d 784, 790 (1964). Just as well-recognized is the definition of waiver: the intentional relinquishment or abandonment of a known right. *Anderson,* 96 Ariz. at 131, 392 P.2d at 790. In dealing with waivers of constitutional rights in criminal cases, the defendant's waiver must be voluntarily, knowingly and intelligently made. *See United States v. Cochran,* 770 F.2d 850, 851 (9th Cir.1985). *See also State v. Superior Court,* 105 Ariz. 553, 555, 468 P.2d 580, 582 (1970). Finally, because of the importance of the right being waived, the waiver must be express rather than implied. *Menna v. New York,* 423 U.S. 61, 62–63, 96 S.Ct. 241, 242, 46 L.Ed.2d 195 (1975).

■ Yet, the first question we must address is whether the defendant even had an opportunity to waive his double jeopardy right in the first instance. The record is confusing. The trial court's minute entry denying the defendant's motion to dismiss indicates that "Defendant's counsel in cause number CR–11399, the kidnapping and custodial interference matter, and

counsel in cause number CR–11525, the murder case, opposed the consolidation of these charges at the trial which commenced June 4, 1990, before Judge Pope in cause number CR–11399." The affidavit of the deputy county attorney who was responsible for the prosecution of both cases reveals that the issue of consolidation and a continuance was informally discussed with the attorneys representing the defendant in both cases.[6] The record also reveals that the prosecutor failed to undertake the procedure—a motion—that would require a formal response by the defendant and some action by the court. Only by formally presenting the motion to the court could the prosecution put the defendant to the necessity of registering a position in open court to which appropriate consequences would attach. Because the state did not do so, no choice was given the defendant, and no waiver by the defendant occurred. Moreover, even if the defendant had such a choice, he must be the one to make it, not his attorney. "Inasmuch as this right is anchored to the United States Constitution, it cannot be waived by one other than the accused." *United States v. Rich,* 589 F.2d 1025, 1032 (10th Cir.1978). Here, even if the conversation among the lawyers concerning whether a consolidation would be agreeable to the defendant could be equated with a formal motion—and we hold that it cannot—the record is silent concerning the defendant's knowledge of this discussion or that he assented to it or knew its import. There simply is no waiver of the defendant's double jeopardy rights under these facts.

---

6. **AFFIDAVIT**

STATE OF ARIZONA
COUNTY OF MOHAVE
   ROBERT R. MOON, being first duly sworn, deposes and says:
   1. I am a Deputy Mohave County Attorney, licensed to practice law in the State of Arizona.
   2. I represented the State in the prosecution of TIMOTHY PRICE QUINTON in Mohave County Superior Court No. CR–11399 and CR–11525.
   3. On or near the date of the issuance of the Indictment in CR–11525, for First Degree Murder, I spoke with M. Ruth O'Neill, W. Joseph Wilkinson and Wayne Floyd, in separate conversations, about the possibility of consolidating the two pending cases for trial. Mr. Floyd and Mr. Wilkinson advised me that they would not be representing the defendant against the murder charge, nor would they agree to continuing the trial in CR–11399 to consolidate the murder and kidnapping charges for trial even if Ms. O'Neill joined the defense team.
   Ms. O'Neill advised me that she would not be prepared to try the murder case on June 4, 1990, nor would she be interested in consolidating the charges and trying the case as co-counsel with Floyd and Wilkinson.
   (S) ROBERT R. MOON
   ROBERT R. MOON

B. *Should the Prosecution of the Defendant for Murder Be Dismissed Because it Violates the Constitutional Protection against Double Jeopardy?*

■ At the outset we should say that, because the federal and state constitutional provisions do not significantly differ, we will use the same standard to analyze both provisions. *See State v. Herrera–Rodriguez,* 164 Ariz. 49, 51–52, 790 P.2d 747, 749–50 (App.1989), *petition for review granted,* May 24, 1990 (the similarity of language of the due process clauses in the federal and state constitutions suggests the use of a similar standard).

■ The constitutional double jeopardy provisions protect against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Grady v. Corbin,* 495 U.S. 508, ——, 110 S.Ct. 2084, 2090, 109 L.Ed.2d 548 (1990) (citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)); *State v. Rumsey,* 136 Ariz. 166, 168, 665 P.2d 48, 50 (1983), *aff'd,* 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984). We are concerned only with the second situation.

The reasoning behind the constitutional protection is multiple: The protection is based on the idea that the state, with all its resources and power, should not be allowed to make repeated attempts to convict. *Rumsey,* 136 Ariz. at 168–69, 665 P.2d at 50–51 (quoting *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)). Such repeated attempts to convict give the state the opportunity to hone the manner in which it will present its proof in order to give it the greatest impact. *See Tibbs v. Florida,* 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982). Even when multiple prosecutions are permitted, such prosecutions place an additional burden upon a defendant to face the charges one at a time. *See Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

■ The *Blockburger* test deals principally with the "identical elements" idea.

When the same act or transaction constitutes a violation of two distinct statutory provisions, the test to determine whether there are two offenses or only one is whether each provision requires proof of a fact that the other does not. *Id.* If one provision requires proof of an additional fact, which the other does not, the offenses are not the same. *Id.* This is true even though the proof required to establish the element overlaps in both charges. *Iannelli v. United States,* 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293–94 n. 17, 43 L.Ed.2d 616 (1975). *See also Illinois v. Vitale,* 447 U.S. 410, 416 n. 6, 100 S.Ct. 2260, 2265 n. 6, 65 L.Ed.2d 228 (1980).

Yet, in dealing with multiple prosecutions, the *Blockburger* test is not the exclusive one. As the Court said in *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977):

The *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense. Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first. Thus in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), where an acquittal on a charge of robbing one of several participants in a poker game established that the accused was not present at the robbery, the Court held that principles of collateral estoppel embodied in the Double Jeopardy Clause barred prosecutions of the accused for robbing the other victims. And in *In re Nielsen,* 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889), the Court held that a conviction of a Mormon on a charge of cohabiting with his two wives over a 2½–year period barred a subsequent prosecution for adultery with one of them on the day following the end of that period.

In both cases, strict application of the *Blockburger* test would have permitted imposition of consecutive sentences had

the charges been consolidated in a single proceeding. . . .

*Id.* at 166 n. 6, 97 S.Ct. at 2226 n. 6.

In *Grady v. Corbin,* the defendant, the driver of a car involved in an accident in which the driver of another car was killed, pled guilty to driving while intoxicated and failing to keep right of the median. 110 S.Ct. at 2087–89. The Supreme Court held that he could not later be prosecuted for manslaughter and assault charges arising out of the same accident because the subsequent prosecution would violate the defendant's constitutional double jeopardy right. 110 S.Ct. at 2094. In *Grady,* the Court recognized that the double jeopardy principle goes beyond the mechanical "identical element" analysis to include identical conduct. 110 S.Ct. at 2093. Under *Grady,* a subsequent prosecution is unconstitutional if, in order to establish an element of an offense, the prosecution must prove conduct that constitutes an offense for which the defendant already has been prosecuted. *Id.* Arizona seems to have approved the *Grady* rationale. *See Taylor v. Sherrill,* 166 Ariz. 359, 362, 802 P.2d 1058, 1061 (1990); *Hovey v. Superior Court,* 165 Ariz. 278, 281, 798 P.2d 416, 419 (App.1990).

■ We should carefully distinguish between proving the same conduct in two prosecutions and using the same evidence in two prosecutions. The rule in *Grady* does not prohibit the prosecutor from introducing the same evidence in the second prosecution that was used in the first prosecution. *Grady,* 110 S.Ct. at 2093. *See Dowling v. United States,* 493 U.S. 342, 353–354, 110 S.Ct. 668, 675, 107 L.Ed.2d 708 (1990). However, if, as here, the second prosecution is dependent on the same conduct as the earlier prosecution, double jeopardy occurs. *Grady v. Corbin,* 495 U.S. at ——, 110 S.Ct. at 2094. *See also United States v. Esposito,* 912 F.2d 60, 64–65 (3d Cir.1990), *cert. dismissed,* —— U.S. ——, 111 S.Ct. 806, 112 L.Ed.2d 1032 (1991).

■ In this case, the conduct to be proved in the second prosecution is the identical conduct proved in the first. The conduct upon which the state based its prosecution of the defendant for kidnapping was that the defendant took the child against her will with the intent to kill her. The prosecution of the defendant for first degree murder pursuant to A.R.S. § 13–1105 would require proof of exactly the same conduct. However, as the Court in *Grady* pointed out, if the state has other conduct proving the murder which is different from the conduct proved in the kidnapping case, and which would satisfy the elements of first degree murder, the kidnapping conviction would not bar the subsequent prosecution. *Grady v. Corbin,* 495 U.S. at ——, 110 S.Ct. at 2094. The state has not only not shown that it will rely on different conduct to prove that the defendant murdered Rebecca Lanning; it has conceded that it will not.

The state claims that the kidnapping evidence could be used to prove identity, motive, opportunity, or completion of the story of the crime under Rule 404(b) of the Arizona Rules of Evidence, and that this use is permissible under *Dowling.* In *Dowling,* the defendant had been charged with armed robbery. *Dowling v. United States,* 493 U.S. at 343–344, 110 S.Ct. at 670. The government sought to introduce evidence under Rule 404(b) of the Federal Rules of Evidence that the defendant had been involved in another robbery two weeks after the robbery which was the subject of the present prosecution. *Id.* The Court held that the defendant's acquittal of the other robbery charge did not prevent the use of the same evidence to prove his identity in the second trial for a different robbery. *Id.* at 353, 110 S.Ct. at 675. The issue here is totally different. Here, both prosecutions focus on the same conduct arising out of the same incident. Evidence of the kidnapping would not be offered to show identity of the defendant, but rather to show the murder of Rebecca Lanning by the defendant. *Dowling* does not apply.

■ Finally, the state requests that if we feel that *Grady* dictates that double jeopardy applies to prevent the subsequent prosecution of the defendant, that the dismissal be without prejudice. It is our understanding that the defendant has appealed his kidnapping and custodial inter-

ference conviction. If he is successful in that endeavor and the matter is sent back to the trial court for a new trial, the state may wish to try the murder case rather than the kidnapping case. They should have that choice if it is available to them.

The relief requested is hereby granted, except that the trial court is directed to dismiss the pending prosecution without prejudice.

VOSS, P.J., and FIDEL, J., concur.